# Illinois Official Reports

## Appellate Court

*People v. Zaibak*, 2014 IL App (1st) 123332

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EMAD ZAIBAK, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-12-3332 |
| Filed | December 8, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's convictions for organizing a continuing financial crimes enterprise and predicate convictions for theft by unauthorized control, theft by deception, and loan fraud, the appellate court held that defendant failed to establish that the "organizer of a continuing financial crimes enterprise" statute was unconstitutionally vague as applied to him, that the trial court properly admitted certain loan files as business records, and that defendant was guilty of two counts of being an organizer of a continuing financial crimes enterprise, but one count of being an organizer of a continuing financial crimes enterprise and three predicate convictions of theft by unauthorized control were vacated and the cause was remanded for resentencing. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-2035-01; the Hon. Stephen J. Connolly, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. Cause remanded with directions. |

Counsel on
Appeal

Marc Martin, Ltd., of Chicago (Marc W. Martin, of counsel), and Law Offices of John J. Eannace, of Palos Heights (John J. Eannace, of counsel), for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michael Z. Zhu, and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Cunningham and Connors concurred in the judgment and opinion.

## OPINION

¶ 1  The circuit court convicted defendant, Emad Zaibak, after a bench trial of three counts of organizing a continuing financial crimes enterprise. 720 ILCS 5/16H-55 (West 2006). Those three counts, in turn, were based on defendant being convicted of the following predicate convictions: three counts of theft by unauthorized control; three counts of theft by deception; and three counts of loan fraud. Defendant raises the following issues for our review: (1) whether the "organizer of a continuing financial crimes enterprise" statute (720 ILCS 5/16H-55 (West 2006)) is unconstitutionally vague; (2) whether the circuit court abused its discretion when it admitted the contents of loan files from two banks, Washington Mutual and Harris Bank, as business records; (3) whether the State provided sufficient evidence to convict him of loan fraud (720 ILCS 5/16H-30 (West 2006)); and (4) whether the State provided sufficient evidence to convict him of being an organizer of a continuing financial crimes enterprise (720 ILCS 5/16H-55 (West 2006)). Additionally, the parties agree that defendant's conviction for being an organizer of a continuing financial crimes enterprise based on the three predicate convictions of theft by unauthorized control should be vacated. The parties, however, disagree on whether the matter needs to be remanded for resentencing.

¶ 2  We hold defendant has not satisfied his burden of proving that the "organizer of a continuing financial crimes enterprise" statute (720 ILCS 5/16H-55 (West 2006)) is unconstitutionally vague as applied to him. Further, the circuit court did not abuse its discretion when it admitted the contents of the respective loan files as business records, and the State presented sufficient evidence showing defendant committed loan fraud (720 ILCS 5/16H-30 (West 2006)) and two counts of being an organizer of a continuing financial crimes enterprise (720 ILCS 5/16H-55 (West 2006)). We agree with the parties that one of defendant's convictions for being an organizer of a continuing financial crimes enterprise, and the three predicate convictions of theft by unauthorized control that the conviction is based on, must be vacated. Therefore, we vacate those convictions and remand the matter to the circuit court solely for resentencing.

## JURISDICTION

The circuit court sentenced defendant on October 19, 2012. Defendant timely filed his notice of appeal on October 20, 2012. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 603 and 606, governing appeals from a final judgment of conviction in a criminal case entered below. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. Rs. 603, 606 (eff. Feb. 6, 2013).

## BACKGROUND

A grand jury charged defendant and others with 33 fraud-related counts involving 10 real estate loans on 8 properties. Codefendants Ocie Johnson, John Bobak, and Omar Alzaibak entered guilty pleas and executed cooperation agreements. After defendant waived his right to a jury trial, the circuit court conducted a bench trial on 12 counts, based on three 2007 financial transactions involving two properties: a mortgage and a home equity line of credit for property located at 106 Forest Edge, in Palos Park, Illinois, and a mortgage for property located at 221 Sawgrass in Palos Heights, Illinois. Codefendants Sam Elayyan and Nate Morgan[1] were also tried with defendant, although Elayyan had a jury trial. Relevant here, counts IX, XI, and XIII of the indictment against defendant alleged theft by deception. Those counts served as the predicate to count II, which alleged defendant was an organizer of a continuing financial crimes enterprise. Counts XXVI through XXVIII alleged defendant committed loan fraud, and also served as the predicate for count III, which contained another allegation against defendant for being an organizer of a continuing financial crimes enterprise.[2]

### The Lending Center and Silver Key Lending and Investment Group

Around 2004, defendant and his colleague John Kocher opened a mortgage brokerage, The Lending Center, as equal partners. Defendant became the president of the organization. The Lending Center served as a loan originator but did not underwrite loans. Eventually, Kocher and defendant's relationship deteriorated, and Kocher dissociated himself from The Lending Center in the spring of 2007. Kocher maintained a formal interest in the company until May 8, 2009.

After defendant and Kocher's relationship ended, defendant opened up Silver Key Lending and Investment Group (Silver Key) with his childhood friend Youssef Allen. Defendant and Allen set up Silver Key's office at 744 North Wells Street, in Chicago, Illinois. At first, Silver Key had four employees: defendant, Allen, Stella Brown, and defendant's uncle Aimen Rafati. Stella Brown had worked as a loan processor for The Lending Center. Defendant later "started filling the office with people," including Nate Morgan. Brown did not remember what Morgan did, but recalls Rafati referred to Morgan as one of defendant's "boys."

---

[1]Morgan was charged in a separate but similar indictment.

[2]As discussed *supra*, the parties agree that counts I, VIII, IX, and X should be vacated, but disagree on whether this court should remand the matter for resentencing.

¶ 11       John Bobak, a builder doing business as J.B. Builders, purchased a lot at 106 Forest Edge in Palos Park, Illinois, and built a home on it. He hired Laura Burns, a real estate agent, to sell the home. Defendant told Burns that he was interested in the house for his parents. Bobak showed defendant the house, which defendant liked. On May 5, 2007, defendant and Bobak met at Burns' office and negotiated a contract for the purchase of the property for $2.2 million, which included extras and improvements. Burns drafted the contract as a ministerial agent for both parties. The contract lists Bobak as the seller and defendant's father and codefendant Omar Alzaibak as the buyer. The defendant is not a buyer in the contract. Bobak signed the contract and defendant, using his father's initials, initialed each page of the contract. At that time, Burns and Bobak had not met Alzaibak, and Alzaibak did not attend the meeting or provide any input to Burns about what should go into the contract.

¶ 12       The contract designated The Lending Center as the mortgage company. Defendant arranged for Washington Mutual to provide $1.7 million in mortgage financing for Alzaibak. Defendant had Alzaibak sign the mortgage application, which Alzaibak did not read or understand. The application falsely stated that Alzaibak made $38,000 a month as the chairman of the board of Zaibak Center for Dentistry. Defendant's brother, Zyad Zaibak, operated a dental practice named Zaibak Center for Advanced Dentistry, but he did not employ or pay Alzaibak. The application also falsely stated that Alzaibak made $30,000 a month as the chairman of Lina Enterprises. Alzaibak did own a grocery store in 2005 named Lina Enterprises, but he did not make $30,000 a month from operating it. The application also falsely stated Alzaibak shared a Harris Bank account with his ex-wife that had a balance of $855,322.81 on April 9, 2007, and $446,110.81 on May 9, 2007. Alzaibak admitted that the information on the loan application was not true. According to the application, Alzaibak also owned property at 14007 South 84th Street in Orland Park, Illinois, without encumbrance, which was untrue as he relinquished his interest in the property in 2002 by conveying it in a quitclaim deed to his ex-wife and defendant. Defendant falsely documented Alzaibak's financial condition with fabricated Harris Bank records showing the purchases of a $450,000 cashier's check; a remaining balance of $446,110, a false earnest money cashier's check, and a letter from Alzaibak's former accountant, Adnan Elhaj, of HAJ Financial, Inc., falsely attesting to Alzaibak's employment. Elhaj testified that the documents submitted using HAJ Financial's letterhead regarding Alzaibak's financial situation were false. He was never asked to prepare any letters regarding Alzaibak's finances to Washington Mutual or Harris Bank.

¶ 13       On June 4, 2007, the closing occurred for the sale of the 106 Forest Edge property. The closing was a "dry closing" in that legal documents were signed but no money changed hands. Defendant, his parents, Rafati, Bobak, and Bobak's attorney were in attendance. Defendant directed Alzaibak what to sign and initial. Washington Mutual disbursed $1,767,853 to various parties, including: $1,063,324 to Archer Bank to pay Bobak's first mortgage; $611,598 to Bobak as seller's proceeds; $61,250 to Bobak's agent, Century 21; and $15,804 to The Lending Center. The proceeds that went to The Lending Center were deposited into defendant's personal account.

¶ 14       Bobak, as reflected in the contract and the settlement sheet at closing, was to receive $450,000 in earnest money from Alzaibak. Defendant and Bobak agreed in advance that the contract would falsely state that Alzaibak tendered the $450,000 in earnest money in order to

induce Washington Mutual into providing more funding than it typically would have done. The Washington Mutual loan file included a Harris Bank cashier's check that paid Bobak $450,000 earnest money that was used to apply for the mortgage at 106 Forest Edge. Bobak testified he had never seen the check before. Defendant and Bobak had a side agreement whereby Bobak would complete various improvements on the house for $100,000. Washington Mutual would have denied financing had this been part of the sale agreement. Bobak subsequently tried to collect from defendant and Alzaibak. He eventually placed an $80,000 lien on the house.

¶ 15                                   Home Equity Line of Credit

¶ 16    After the closing of 106 Forest Edge, defendant contacted Harris Bank manager Rami Haleem to obtain a home equity line of credit on the property. Defendant told Haleem the property was worth $2.65 million. Defendant explained in a June 7, 2007, email to Angel Ulan, a banker managed by Haleem, that he needed the home equity line of credit to be obtained quickly, stating: "My dad owns this house free and clear. However, we need [a home equity line of credit] as soon as possible. I have an investment coming up on the 15th of June that I will need close to million dollars for. Please help me in expediting this." Defendant sent Ulan a uniform residential loan application and other documents for the home equity line of credit.

¶ 17    The home equity line of credit loan application was submitted under a program that extended credit based on credit history as opposed to documentation. The application falsely identified Alzaibak as the senior vice president of The Lending Center for the previous 4½ years. It also indicated that he earned $66,000 a month and had $700,000 in liquid assets. Defendant also sent Ulan a false settlement statement indicating that Alzaibak paid $1.75 million in cash and $450,000 in earnest money at closing. When Harris Bank ran Alzaibak's credit report on June 7, 2007, it had not yet reflected the $1.75 million mortgage to Washington Mutual because it usually takes about 30 days for a loan to appear on a credit report.

¶ 18    Harris Bank approved a $1.4 million home equity line of credit to Alzaibak on June 15, 2007. On June 29, 2007, defendant directed Alzaibak to complete paperwork at an Orland Park, Illinois, branch of Harris Bank. Alzaibak, after completing the paperwork, authorized a request from defendant to have the entire home equity line of credit placed in defendant's Harris Bank account. On July 7, 2007, Harris Bank disbursed $1.4 million directly into defendant's checking account.

¶ 19    Defendant, Alzaibak, and other family members moved into the home at 106 Forest Edge. Alzaibak was under the impression that defendant was making the mortgage payments. The mortgage went into default in less than a year.

¶ 20                                   221 Sawgrass Property

¶ 21    Ocie Johnson earned $8 an hour in early 2007 and lived at his mother's house in Dolton, Illinois. Johnson boasted to Eric Peoples, an auto shop owner, that he had a good credit score. Peoples introduced Johnson to Nate Morgan later that week. Morgan, Johnson, and Peoples discussed his credit score and employment situation. Morgan told Johnson that they "could do business" due to his good credit score. Morgan asked Johnson to send him a copy of his

driver's license and social security information, which Johnson did. Several weeks later, Morgan had Johnson open a credit card account at Home Depot. Morgan also had Johnson open an account up at J.P. Morgan Chase. When Johnson received his credit card in the mail, he gave it to Morgan.

¶ 22    Several weeks later, Morgan drove Johnson to Silver Key's office at 744 North Wells Street in Chicago and met defendant. Defendant told Johnson that he helped people, including professional athletes, purchase houses. He gave Johnson his Silver Key business card. After Morgan and defendant talked with one another, defendant told Johnson that he had some papers for him to sign and initial. Upon Johnson's signing of the documents, Morgan turned them face side down. Morgan handed all of the documents to defendant. Johnson did not read or understand the documents he signed, but he was told by Morgan that the documents were for the house they were "getting." About a week later, Morgan called Johnson and informed him that a driver would pick him up. The driver drove Johnson to defendant's office, where Johnson met defendant and Morgan. Johnson signed more documents given to him by defendant. Morgan again collected the documents in the same manner as before and handed them to defendant.

¶ 23    On September 7, 2007, Morgan drove Johnson to defendant's office. While driving, Morgan told Johnson that they were "about to get the house." After going to defendant's office, defendant, Johnson, Morgan, and one other person took a cab to what Johnson thought was the upstairs room of a bank. Codefendant Sam Elayyan and several other people were there. Morgan introduced Johnson to Elayyan as the owner of Dupont Motors and Fresh Wear clothing store. A woman told Johnson she was his attorney and showed him where to initial and sign several documents. Afterwards, Morgan told Johnson that he got "his money" and that he would give Johnson his share.

¶ 24    Johnson had purchased a $2.45 million home from Elayyan located at 221 Sawgrass in Palos Heights, Illinois. Silver Key prepared and submitted the mortgage loan application to Washington Mutual for Johnson. Defendant is listed as the interviewer who prepared Johnson's application. The application falsely lists Johnson as renting his residence at 1620 South Michigan Avenue, No. 1107, in Chicago, Illinois for $4,700 a month. Defendant owned this property, and Johnson never lived there. The application also falsely listed Johnson as a manager at Dupont Motors. It stated he made $39,000 a month. It also stated he had a J.P. Morgan Chase account with a balance of $665,000. The application also stated that Johnson had paid $490,000 in earnest money and planned to use the property as his primary residence. Silver Key documents falsely stated Johnson's financial status with false bank statements from J.P. Morgan Chase, a false earnest money check, false utility bills from 1620 South Michigan Avenue, and false rent verification. The Washington Mutual file shows a fax from Dupont Motors verifying Johnson's employment from February of 2004.

¶ 25    Washington Mutual approved the loan and disbursed $1.96 million. Included in this disbursement was $1,303,635 to pay Elayyan's first mortgage; $94,255 to pay Elayyan's second mortgage; $540,496 to Elayyan as seller's proceeds; and $53,936 to Silver Key for being the broker. Elayyan endorsed the $540,496 seller's proceeds check to defendant. Defendant gave $100,000 to Morgan. Defendant, by wire transfer from his personal Harris Bank account, paid $330,500 to Elayyan's account. Morgan wrote Johnson a $7,000 check. Although he visited the property at 221 Sawgrass two times, Johnson never lived there.

Johnson thought Morgan was making the mortgage payments because he lived there. In January of 2008, the property went into foreclosure.

¶ 26                                     Loan Files

¶ 27    Prior to trial, defendant objected to the admission of the loan files for the 221 Sawgrass property and the 106 Forest Edge property under the business records rule. After argument, the court allowed the loan files to be admitted as business records.

¶ 28    At trial, the State presented Washington Mutual's loan files through the testimony of Brett Hellstrom. Hellstrom testified he was employed by J.P. Morgan Chase as a loan review quality analyst, which he described as a "form of underwriting." He had been employed with Washington Mutual as a senior mortgage underwriter before the federal government shut it down. Once J.P. Morgan Chase bought Washington Mutual, Hellstrom began working for J.P. Morgan Chase and authorized him as the keeper of the records for Washington Mutual's 2007 loan files. Hellstrom testified Washington Mutual kept the records in the ordinary course of business. He reviewed the loan files before and at trial. The contents of the loan files were admitted for the purchase of 221 Sawgrass and 106 Forest Edge as business records. The files also documented the pay history and servicing of the loans. J.P. Morgan Chase also made Hellstrom keeper of the records for records it kept in the ordinary course of business for documents admitted into evidence including separate bank account statements for Elayyan and Johnson.

¶ 29    Julie Krecji, who was authorized by Harris Bank as custodian of its records, supplied a business records affidavit of certification for Harris Bank statements of defendant, defendant's mother Aida Rafati, and Alzaibak. Krecji, in the certificate of authenticity of business records, stated that the documents were original records made at or near the time of the occurrence and were kept in the ordinary course of business.

¶ 30    The circuit court found defendant guilty of all 12 counts at issue. Defendant filed a motion for a new trial, which the circuit court denied. Relevant here, defendant again objected to the admission of the business records as testified to by Brett Hellstrom and as attested to by Julie Krecji. The circuit court sentenced defendant to concurrent 12-year prison terms for being an organizer of a financial crime enterprise, theft and loan fraud. The State nol-prossed the remaining 21 counts against defendant and also charges brought against him under case number 10 CR 15492. Defendant timely appealed.

¶ 31                                     ANALYSIS

¶ 32    Defendant first argues that the "organizer of a financial crimes enterprise" statute (720 ILCS 5/16H-55 (West 2006)) is unconstitutionally vague because it fails to define the following terms contained therein: "organizer"; "supervisor"; "financier"; and "other position of management." In response, the State maintains that the statute is constitutional and argues that none of the authority defendant puts forth in his brief is relevant as cases defendant relies upon deal with federal sentencing guidelines.

¶ 33    Challenges to the constitutionality of a statute are questions of law subject to *de novo* review. *People v. Masterson*, 2011 IL 110072, ¶ 23. Statutes are presumed to be constitutional. *People v. Johnson*, 225 Ill. 2d 573, 584 (2007). Whenever reasonably possible, courts of review are to uphold the constitutionality of a statute. *Masterson*, 2011 IL 110072,

¶ 23. The challenging party has the burden of proving the unconstitutionality of a statute. *People v. Molnar*, 222 Ill. 2d 495, 509 (2006). Whenever reasonably possible, we have a duty to construe a statute to uphold its validity and constitutionality. *People v. Bailey*, 167 Ill. 2d 210, 225 (1995). When interpreting a statute in the face of a constitutional challenge, we must remember to "ascertain and give effect to the legislature's intent in enacting the statute." *Bailey*, 167 Ill. 2d at 225. Accordingly, "an interpretation that renders a statute valid is always presumed to have been intended by the legislature." *Id.*

¶ 34        A statute is unconstitutionally vague, and violates due process, "only if the terms of the statute are so ill-defined 'that the ultimate decision as to its meaning rests on the opinions and whims of the trier of fact rather than any objective criteria or facts.' " *People v. Molnar*, 222 Ill. 2d 495, 524 (2006) (quoting *People v. Burpo*, 164 Ill. 2d 261, 265-66 (1995)). A vagueness challenge fails, and due process is satisfied, where: "(1) the statute's prohibitions are sufficiently definite, when measured by common understanding and practices, to give a person of ordinary intelligence fair warning as to what conduct is prohibited; and (2) the statute provides sufficiently definite standards for law enforcement and triers of fact that its applications do not depend merely on their private conceptions." *Molnar*, 222 Ill. 2d at 524-25. "An act is not, however, unconstitutionally vague simply because one can conjure up a hypothetical dispute over the meaning of some of the act's terms." *People v. Greco*, 204 Ill. 2d 400, 416 (2003).

¶ 35        We note that defendant has not shown that his vagueness challenge implicates the first amendment. Our supreme court has held that "[t]o prevail on a vagueness challenge to a statute that does not implicate first amendment concerns, a party must demonstrate that the statute was vague as applied to the conduct for which the party is being prosecuted." *Bailey*, 167 Ill. 2d at 228. As previously stated, it is defendant's burden to prove the unconstitutionality of a statute. *Molnar*, 222 Ill. 2d at 509. Defendant here, however, has not shown how his challenge implicates the first amendment. Accordingly, we will consider his challenge as applied to his conduct for which he was prosecuted.

¶ 36        The "organizer of a financial crimes enterprise" statute, section 16H-55, part of the Illinois Financial Crime Law, provides:

>        "(a) A person commits the offense of being an organizer of a continuing financial crimes enterprise when the person:
>
>            (1) with the intent to commit an offense under this Article, or, if involving a financial institution, any other felony offense established under this Code, agrees with another person to the commission of that offense on 3 or more separate occasions within an 18 month period, and
>
>            (2) with respect to the other persons within the conspiracy, occupies a position of *organizer, supervisor, or financier or other position of management.*
>
>            (b) The person with whom the accused agreed to commit the 3 or more offenses under this Article, or, if involving a financial institution, any other felony offenses established under this Code, need not be the same person or persons for each offense, as long as the accused was a part of the common scheme or plan to engage in each of the 3 or more alleged offenses." (Emphasis added.) 720 ILCS 5/16H-55 (West 2006).

¶ 37        The General Assembly, in its legislative declaration for the Illinois Financial Crime Law, provided:

"It is the public policy of this State that the substantial burden placed upon the economy of this State resulting from the rising incidence of financial crime is a matter of grave concern to the people of this State who have a right to be protected in their health, safety and welfare from the effects of this crime." 720 ILCS 5/16H-5 (West 2006).

¶ 38   After reviewing the statute, as applied to defendant's status as an organizer, supervisor, or manager, we hold the statute's terms, *i.e.*, whether a person "occupies a position of organizer, supervisor, *** or other position of management," are sufficiently definite to give a person of ordinary intelligence warning of what conduct is prohibited under the "organizer of a continuing financial crimes enterprise" statute and provides definite standards for application by law enforcement or a trier of fact. 720 ILCS 5/16H-55 (West 2006); *Molnar*, 222 Ill. 2d at 524-25. The clear terms of the statute specify that the person has to be an organizer or supervisor or in another position of management. We cannot say that an ordinary person would have any difficulty determining whether someone organized, supervised, or managed a continuing financial crimes enterprise. Defendant had the burden of proving that the statute's terms "are so ill-defined 'that the ultimate decision as to [their] meaning rests on the opinions and whims of the trier of fact rather than any objective criteria or facts.' " *Molnar*, 222 Ill. 2d at 524 (quoting *Burpo*, 164 Ill. 2d at 265-66). We hold that he has not carried that burden here as the terms of the statute are not unconstitutionally vague as applied to him.

¶ 39                                       Business Records

¶ 40   Defendant next argues that the circuit court erred when it admitted the contents of the loan files as business records because the State did not lay a proper foundation for them and they contained multiple levels of hearsay. The State disputes defendant's contention and argues that the circuit court did not abuse its discretion where it admitted the contents of the loan files for purposes beyond the scope of hearsay.

¶ 41   Rule 902 of the Illinois Rules of Evidence provides a list of self-authenticated evidence, where "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required." Ill. R. Evid. 902 (eff. Jan. 1, 2011). Rule 902(11) provides, in relevant part:

"(11) Certified Records of Regularly Conducted Activity. The original or a duplicate of a record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written certification of its custodian or other qualified person that the record

(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of these matters;

(B) was kept in the course of the regularly conducted activity; and

(C) was made by the regularly conducted activity as a regular practice.

The word 'certification' as used in this subsection means with respect to a domestic record, a written declaration under oath subject to the penalty of perjury ***. A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and certification available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them." Ill. R. Evid. 902(11) (eff. Jan. 1, 2011).

¶ 42    Rule 803 of the Illinois Rules of Evidence, in turn, provides a list of hearsay exceptions that are not excluded by the hearsay rule, even though the declarant is unavailable. Rule 803(6) provides, in relevant part:

> "(6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness, but not including in criminal cases medical records." Ill. R. Evid. 803(6) (eff. Jan. 1, 2011).

¶ 43    It is within the circuit court's discretion to admit evidence, and we will not reverse the circuit court's decision absent an abuse of that discretion. *People v. Becker*, 239 Ill. 2d 215, 234 (2010). "An abuse of discretion occurs where the trial court's decision is arbitrary, fanciful or unreasonable [citation] or where no reasonable person would agree with the position adopted by the trial court [citations]." *Id.*

¶ 44    At trial, Washington Mutual's loan files were presented through the testimony of Brett Hellstrom while Harris Bank's loan documents were entered into evidence through a Rule 902(11) business records affidavit of certification from Julie Krecji. Hellstrom testified he was the authorized keeper of the records for Washington Mutual's mortgage underwriting files for the year 2007. He described his position at Washington Mutual and his eventual employment with J.P. Morgan Chase after Washington Mutual's demise. He testified that he had reviewed the files, which were kept in the ordinary course of business. He had also been made keeper of the records for J.P. Morgan Chase's records kept in the ordinary course of business regarding the bank accounts of Elayyan and Johnson. Krecji stated in her affidavit that the documents were original records made at or near the time of the occurrence and kept in the normal course of business.

¶ 45    Our review of the record shows that the circuit court did not abuse its discretion when it admitted the relevant loan documents into evidence as attested to by the representatives of Washington Mutual and Harris Bank. The State laid a proper foundation, as shown above, and the circuit court admitted the documents, not to prove the truth of the matter asserted, but, rather, they were introduced to show that they were contained in Washington Mutual's and Harris Bank's files. Defendant does not dispute that he had the opportunity to review the documents or that Hellstrom and Krecji were authorized as custodial record keepers by Washington Mutual and Harris Bank. After reviewing Hellstrom's testimony and Krecji's affidavit, we cannot say that the circuit court's decision to admit their respective testimony was arbitrary, fanciful, or unreasonable. *Becker*, 239 Ill. 2d at 234. Accordingly, we hold the circuit court did not abuse its discretion when it admitted loan documents contained in the files of the victims of this case, Washington Mutual and Harris Bank.

¶ 46                                    Sufficiency of the Evidence

¶ 47    Defendant challenges the sufficiency of the evidence of his convictions for being an organizer of a continuing financial crime and for loan fraud. Defendant does not contest his

convictions for theft by deception under counts IX, X, and XI, which served as the predicate offenses for his conviction for being an organizer of a continuing financial crime under count II. Accordingly, defendant challenges the sufficiency of the evidence for his convictions for being an organizer of a continuing financial crime under counts II and III, and for loan fraud under counts XXVI through XXVIII.

¶ 48    Defendant argues that *de novo* review is appropriate here because he is not asking this court to reweigh the evidence or make a credibility determination. Rather, he is asking this court to analyze the elements of a criminal statute to determine its essential elements. The State agrees that this court's review of what a statute proscribes is subject to *de novo* review, but it argues that defendant's challenge to the sufficiency of the evidence proving the elements of the crime is subject to the standard of review put forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), *i.e.*, "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Id.* at 319. We agree with the State and will use *de novo* review when determining matters of statutory construction, but we will use the *Jackson* standard of review to determine whether the State presented sufficient evidence to satisfy the elements of the crime charged. Accordingly, we will first review the issues defendant raises that require statutory interpretation before determining whether the State presented sufficient evidence to convict defendant of loan fraud as alleged in counts XXVI through XXVIII and being an organizer of a continuing financial crimes enterprise as alleged in counts II and III.

¶ 49    The interpretation of a statute's provisions is a question of law reviewed *de novo*. *People v. Davis*, 199 Ill. 2d 130, 135 (2002). When construing a statute, we must determine the legislature's intent by looking at the plain and ordinary meaning of the language of the statute. *Molnar*, 222 Ill. 2d at 518. Statutory language that is clear and unambiguous will be applied without reliance on aids of statutory construction. *Id.* at 518-19. We will view the statute as a whole and not isolate words and phrases. *Id.* at 519. We must also keep in mind the legislature's objectives in enacting the statute. *Davis*, 199 Ill. 2d at 135. "Moreover, criminal or penal statutes are to be strictly construed in favor of the accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute." *Id.*

¶ 50                    Common Scheme of the Three Predicate Offenses

¶ 51    Defendant argues that section 16H-55 of the Illinois Financial Crime Law requires that the State prove that all three predicate offenses were part of the same common plan or scheme. Accordingly, defendant contends the State failed to show any linkage or connection between the predicate offenses. Defendant also argues that the State failed to show how the parties involved in the predicate offenses were at all connected to each other. The State disputes defendant's contention and argues that defendant fails to recognize the plain language of subsection (b) of section 16H-55 of the Illinois Financial Crimes Law.

¶ 52    A person is an organizer of a continuing financial crimes enterprise when he or she commits three or more predicate offenses within an 18-month period and occupies a position of organizer, supervisor, financier, or other management position with respect to the other persons in the conspiracy. 720 ILCS 5/16H-55 (West 2006). Subsection (b) of the statute provides that "[t]he person with whom the accused agreed to commit the 3 or more offenses

- 11 -

*** need not be the same person or persons for each offense, as long as the accused was a part of the common scheme or plan to engage in each of the 3 or more alleged offenses." 720 ILCS 5/16H-55(b) (West 2006).

¶ 53 We disagree with defendant's interpretation of the language of section 16H-55 of the Illinois Financial Crime Law. Specifically, defendant contends that each of the predicate offenses must be linked in a common scheme. Our review of the plain language of section 16H-55, and specifically subsection (b), shows that the common element is whether the defendant is part of a common scheme of each of the predicate offenses. Absent from subsection (b) is any language indicating that all of the predicate offenses and people, other than the accused, needed to be linked to a common scheme. Rather, subsection (b) specifies that the other people involved in the predicate offenses need not be the same people "as long as the accused was a part of the common scheme or plan to engage in *each* of the 3 or more alleged offenses." (Emphasis added.) 720 ILCS 5/16H-55(b) (West 2006). Accordingly, we reject defendant's interpretation of section 16H-55. We hold that this section specifically requires only that the accused be part of the common scheme for each of the predicate offenses. It follows that defendant can commit the offense of being an organizer of a continuing financial crimes enterprise by agreeing to commit each of the three predicate offenses with three different people.

¶ 54 As applied to the facts of this case, count II alleged defendant organized a continuing financial crimes enterprise for committing the three predicate offenses of theft by deception in counts IX, XI, and XIII. In count IX, he committed the predicate crime with Alzaibak and Bobak; while in count XI he did so with only Alzaibak; and in count XIII he committed theft by deception with Elayyan and Johnson. Similarly, in count III, the State alleged defendant committed loan fraud in counts XXVI through XXVIII. In count XXVI, he committed the predicate crime with Alzaibak and Bobak; while in count XXVII he did so with only Alzaibak; and in count XXVIII he committed loan fraud with Elayyan and Johnson. In this case, as alleged in the indictment, defendant was part of the common scheme in each of the three predicate offenses of theft by deception as alleged in count II. Defendant was also part of the common scheme in each of the three predicate offenses of loan fraud as alleged in count III. Defendant is the linkage between the three predicate crimes for both counts of being an organizer of a continuing financial enterprise. This is consistent with subsection (b) of section 16H-55, which allows other people to be involved in the predicate offenses "as long as the accused was a part of the common scheme or plan to engage in each of the 3 or more alleged offenses." 720 ILCS 5/16H-55(b) (West 2006).

¶ 55                    Enterprise or Common Scheme Apart From the Predicate Offenses

¶ 56 Defendant next argues that the State failed to prove the existence of an enterprise, common scheme, or plan apart from the predicate offenses. Similar to his argument regarding a common scheme or plan for the three predicate offenses, defendant again argues that the State did not show that any of defendant's codefendants operated as a structured unit or worked together for a common purpose. Defendant again argues that the State failed to show that the properties involved were linked. The State disputes defendant's contention and again argues that defendant fails to recognize the plain language of subsection (b) of section 16H-55 of the Illinois Financial Crime Law.

¶ 57   We disagree with defendant's contention that the State needed to show that defendant's codefendants were part of a structured unit or worked together for a common purpose as it conflicts with the plain language of subsection (b) of section 16H-55 of the Illinois Financial Crime Law. Subsection (b) of section 16H-55 specifically provides that "[t]he person with whom the accused agreed to commit the 3 or more offenses *** need not be the same person or persons for each offense, as long as the accused was a part of the common scheme or plan to engage in each of the 3 or more alleged offenses." 720 ILCS 5/16H-55 (West 2006). As previously stated, the accused only has to be a part of the common scheme of each of the three predicate offenses, even if the other people involved are different. Furthermore, defendant's argument overlooks that the enterprises or common scheme as alleged in the indictment was theft by deception for count II and loan fraud for count III. Specifically, defendant, as the organizer, manager, or supervisor, was part of the common scheme or plan of three predicate offenses that showed he was an organizer of a continuing financial crimes enterprise. Under count II, the continuing financial crimes enterprise was theft by deception. Under count III, the continuing financial crimes enterprise was loan fraud.

¶ 58                    Defendant as an Organizer, Supervisor, Financier, or Manager

¶ 59   Defendant next argues that the State had to show that defendant had both a leadership role and control over every other person in the conspiracy. The State responds that defendant fails to recognize that the evidence only had to show he occupied one of the roles proscribed by the statute because the terms of the statute are used disjunctively. Specifically, the State argues it only had to show that defendant was an organizer, supervisor, or financier or in another position of management.

¶ 60   The first part of section 16H-55 provides that the offense of being an organizer of a continuing financial crimes enterprise occurs when three or more separate predicate offenses within an 18-month time period are committed by a defendant. 720 ILCS 5/16H-55(a)(1) (West 2006). Subsection (a)(2) of section 16H-55, however, requires that "with respect to the other persons within the conspiracy, occupies a position of organizer, supervisor, *or* financier *or* other position of management." (Emphases added.) 720 ILCS 5/16H-55(a)(2) (West 2006).

¶ 61   After reading the plain language of subsection (a)(2) of section 16H-55, we hold the statute does not make any mention that a defendant had to have had both a leadership role and control over every other person in the conspiracy. Rather, a defendant only has to have occupied one of the following roles: organizer, supervisor, or financier, or be in another position of management. Defendant's interpretation of the requirements of subsection (a)(2) of section 16H-55 is inconsistent with the statute's plain language. In construing a statute, we must look to the statutory terms according to their plain and ordinary meaning. *Molnar*, 222 Ill. 2d at 518.

¶ 62                                   Sufficiency of the Evidence

¶ 63   The due process clause of the fourteenth amendment to the United States Constitution ensures that an accused defendant is not convicted of a crime "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *People v. Carpenter*, 228 Ill. 2d 250, 264 (2008);

*People v. Brown*, 2013 IL 114196, ¶ 52 ("the State bears the burden of proving beyond a reasonable doubt each element of a charged offense and the defendant's guilt"). It is not, however, the function of this court to retry a defendant when reviewing whether the evidence at trial was sufficient to sustain a conviction. *People v. Hall*, 194 Ill. 2d 305, 329-30 (2000). Rather, our review is focused on "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *People v. Baskerville*, 2012 IL 111056, ¶ 31. This standard applies to both circumstantial and direct evidence as well as to both jury and bench trials. *People v. Ehlert*, 211 Ill. 2d 192, 202 (2004); *Brown*, 2013 IL 114196, ¶ 48.

¶ 64        "The testimony of a single witness, if it is positive and the witness credible, is sufficient to convict." *People v. Smith*, 185 Ill. 2d 532, 541 (1999). Circumstantial evidence alone can support a criminal conviction. *Brown*, 2013 IL 114196, ¶ 49. Although the trier of fact is accorded great deference, its decision is not binding or conclusive. *People v. Wheeler*, 226 Ill. 2d 92, 115 (2007). As such, a conviction will be reversed where the evidence is so unsatisfactory, unreasonable, or improbable that it raises a reasonable doubt as to defendant's guilt. *People v. Evans*, 209 Ill. 2d 194, 209 (2004).

¶ 65                                             Loan Fraud

¶ 66        We will first discuss defendant's challenge to his conviction for loan fraud under counts XXVI through XXVIII as they served as predicate offenses for his conviction for being the organizer of a continuing financial crimes enterprise under count III. Defendant argues the State failed to introduce competent proof that the victims of the loan fraud, *i.e.*, Washington Mutual and Harris Bank, as alleged in counts XXVI through XXVIII were financial institutions. In response, the State argues that at all relevant times in 2007, Washington Mutual and Harris Bank were banks and, therefore, financial institutions.

¶ 67        The Illinois Financial Crime Law defines the offense of loan fraud as follows:

> "A person commits the offense of loan fraud when the person knowingly, with intent to defraud, makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of a *financial institution* to act upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security." (Emphasis added.) 720 ILCS 5/16H-30 (West 2006).

The Illinois Financial Crime Law defines the term "financial institution," as follows:

> " 'Financial institution' means any bank, savings bank, savings and loan association, credit union, trust company, currency exchange, or a depository of money, or medium of savings and collective investment." 720 ILCS 5/16H-10(b) (West 2006).

¶ 68        After reviewing the record, we hold the State presented sufficient evidence that Washington Mutual and Harris Bank were financial institutions as defined by the Illinois Financial Crime Law. 720 ILCS 5/16H-10 (West 2006). We remind defendant that circumstantial evidence alone can support a criminal conviction. *Brown*, 2013 IL 114196, ¶ 49. The major part of the testimony of several witnesses involved financial transactions that either Washington Mutual or Harris Bank performed. For example, Rami Haleem testified he

was a "bank manager" with Harris Bank in 2007. He supervised Angel Ulan, whom Haleem described as "one of my bankers." Haleem then described the circumstances of the home equity line of credit that Harris extended to Alzaibak after discussion with defendant. Harris Bank even includes the term "Bank" in its name, lending further support to the State's position that it was in fact a bank in 2007. Regarding Washington Mutual, Brett Hellstrom provided testimony describing underwriting, which he described as making "loan decisions." He testified further that he performed underwriting functions for Washington Mutual in 2007, and he described those functions. Those financial transactions, mortgages from Washington Mutual and a home equity line of credit from Harris Bank, are transactions typically performed by banks. The State presented evidence that Washington Mutual provided the mortgages for both of the properties at issue here and that Harris Bank provided the home equity line of credit for the property at 106 Forest Home Edge. We are of the opinion that a reasonable trier of fact could conclude, based on the abundance of evidence that Washington Mutual and Harris Bank performed transactions that banks commonly perform, *i.e.*, mortgages and home equity lines of credit, that Washington Mutual and Harris Bank were both financial institutions as defined by the Illinois Financial Crime Law during the year 2007 when the transactions occurred.

¶ 69     We note that defendant has not provided any argument addressing any of the other elements of loan fraud. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). Accordingly, since we reject defendant's argument that the State failed to prove that Washington Mutual and Harris Bank were financial institutions as defined by the Illinois Financial Crime Law, we hold that the State presented sufficient evidence that defendant committed loan fraud as stated in counts XXVI through XXVIII of the indictment.

¶ 70                    Organizer of a Continuing Financial Crimes Enterprise

¶ 71     Defendant challenges the sufficiency of the evidence against him for his convictions of being an organizer of a continuing financial crimes enterprise. The State argues that it presented sufficient evidence showing that defendant committed the offense of being an organizer of a continuing financial crimes enterprise under counts II and III of defendant's indictment.

¶ 72     The offense of being an organizer of a continuing financial crimes enterprise is committed when a person agrees with another person in committing three or more predicate offenses within an 18-month time period, and "with respect to the other persons within the conspiracy, occupies a position of organizer, supervisor, or financier or other position of management." 720 ILCS 5/16H-55(a)(1), (2) (West 2006). As previously discussed, "[t]he person with whom the accused agreed to commit the 3 or more offenses *** need not be the same person or persons for each offense, as long as the accused was a part of the common scheme or plan to engage in each of the 3 or more alleged offenses." 720 ILCS 5/16H-55(b) (West 2006).

¶ 73                                    Count II

¶ 74     Count II of the indictment against defendant alleged he committed the offense of being an organizer of a continuing financial crimes enterprise for committing three predicate offenses

of committing theft by deception as alleged in counts IX, XI, and XIII of the indictment. Defendant does not challenge the three predicate offenses of theft by deception before this court, only that the State failed to prove count II of the indictment. As defendant concedes the sufficiency of the evidence of the three predicate offenses of theft by deception as alleged in counts IX, XI, and XIII, we need only address whether the State presented sufficient evidence showing that those three predicate offenses showed that defendant organized a continuing financial crimes enterprise under count II of the indictment.

¶ 75     We hold the State presented sufficient evidence under count II of the indictment to prove defendant organized a continuing financial crimes enterprise. Under count IX, defendant agreed with Bobak and Alzaibak to commit theft by deception regarding the mortgage with Washington Mutual for the property located at 106 Forest Edge. Defendant and Bobak had agreements regarding the earnest money and various house improvements not disclosed to Washington Mutual, the victim. In relation to Bobak, defendant performed the role of organizer because he organized the purchase of the property by deceiving Washington Mutual. Defendant occupied the role of both organizer and supervisor in regard to Alzaibak, as the evidence showed he directed Alzaibak to sign the various documents in order to deceive Washington Mutual. Under count XI, defendant again occupied the role of organizer and supervisor to Alzaibak as he organized the home equity loan with Harris Bank and directed Alzaibak where to sign the relevant paperwork and to eventually transfer the money to him. Under count XIII, defendant occupied the role of organizer and supervisor by again organizing the preparation of the various documents needed to deceive Washington Mutual. The evidence showed one of defendant's "boys," Morgan, recruited Johnson. Defendant directed Johnson regarding what documents to sign. It is undisputed that the offenses in question occurred within an 18-month time period. Accordingly, the State presented sufficient evidence showing that on three separate occasions within an 18-month time period, defendant committed a predicate offense where he occupied the role of organizer or supervisor. We hold the State presented sufficient evidence showing defendant organized a continuing financial crimes enterprise by committing three separate thefts by deception within an 18-month time period and occupied the role of organizer or supervisor.

¶ 76                                     Count III

¶ 77     Count III of the indictment against defendant alleged he committed the offense of being an organizer of a continuing financial crimes enterprise for committing three predicate offenses of loan fraud as alleged in counts XXVI through XXVIII of the indictment. As we have already held that the State presented sufficient evidence that defendant committed the predicate offenses of loan fraud as alleged in counts XXVI through XXVIII, we need only address whether the State presented sufficient evidence showing that those three predicate offenses showed that defendant organized a continuing financial crimes enterprise under count III of the indictment.

¶ 78     Similar to count II above, we also hold the State presented sufficient evidence showing defendant organized a continuing financial crimes enterprise for committing three incidents of loan fraud within an 18-month period. The evidence showed that defendant, through his association with The Lending Center and Silver Key, served as the organizer of the three separate incidents of loan fraud as alleged in counts XXVI through XXVIII. Through his direction, he obtained the mortgage and home equity line of credit at 106 Forest Edge and the

mortgage at 221 Sawgrass. His role in procuring the required documentation, as well as directing both Alzaibak and Johnson where to sign the relevant documents, resulted in Washington Mutual providing mortgages at the properties and for Harris Bank to supply a home equity line of credit. As in count II, it is undisputed that the three occurrences occurred within an 18-month time period. Accordingly, we also hold the State presented sufficient evidence showing defendant organized a continuing financial crimes enterprise for committing three incidents of loan fraud within an 18-month period under count III of the indictment.

¶ 79                             Counts I, VIII, X, and XII

¶ 80     The parties agree that counts I, VIII, X, and XII need to be vacated. Count I of the indictment alleged defendant organized a continuing financial crimes enterprise by committing three instances of theft based on unauthorized control as alleged in counts VIII, X, and XII of the indictment. The parties disagree, however, on whether the matter should be remanded for resentencing. The State argues, in the interest of judicial economy, that this court should vacate the convictions in counts I, VIII, X, and XII, and correct the mittimus, but not remand the matter for resentencing because defendant received concurrent sentences on the remaining counts. Defendant argues that we should remand the matter for resentencing because one third of the counts against him need to be vacated. Alternatively, he asks that we reduce his overall sentence by 33%.

¶ 81     Due to the number of counts to be vacated, and the circuit court being in the better position to determine sentencing in this matter, we are of the opinion that the appropriate remedy in this instance is to remand the matter to the circuit court for resentencing. Accordingly, we vacate defendant's convictions under counts I, VIII, X, and XII; we affirm the judgment of the circuit court in all other respects; and remand the matter for resentencing.

¶ 82                               CONCLUSION

¶ 83     The judgment of the circuit court of Cook County is affirmed in part, vacated in part, and the matter is remanded with directions.

¶ 84     Affirmed in part and vacated in part. Cause remanded with directions.