2025 IL App (1st) 250679-U
No. 1-25-0679B

FIRST DIVISION
August 4, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 23 CR 10896 |
| | ) | |
| SEAN BROWN, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Arthur W. Willis, |
| | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:* The trial court did not err when it denied defendant's motion for relief under the Pretrial Fairness Act.

¶ 2    Defendant Sean Brown filed a Pretrial Fairness Act Appeal under Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024), from the trial court's order entered on March 19, 2025, denying defendant's motion for relief under the Pretrial Fairness Act. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4          On September 15, 2023, prior to the implementation of the Pretrial Fairness Act, the court held a bond hearing, where it ordered defendant held without bond. On March 19, 2024, defendant's attorney filed a motion to vacate the no bond order, arguing that the State never filed the required verified petition to deny defendant pretrial release. That day, the State filed a verified petition to deny pretrial release, contending that the proof was evident or the presumption great that defendant committed first degree murder, defendant posed a real and present threat to the safety of persons in the community, and no condition could mitigate that risk. On April 3, 2024, the court denied defendant's motion and granted the State's petition after a pretrial detention hearing.

¶ 5                         A. Pretrial Detention Hearing and Appeal

¶ 6          At the pretrial detention hearing, the State proffered that the victim, a 45-year-old man, was murdered at approximately 10:40 p.m. on September 8, 2023, after having sustained nine gunshot wounds. The victim was in a romantic relationship with defendant's former girlfriend, and the victim and defendant knew each another.

¶ 7          On the day of the incident, defendant's former girlfriend drove past defendant's barbershop where he was working. Defendant then called her and sent her text messages asking where she was going. She ignored defendant's messages and calls. Defendant then used his Lyft rideshare account to order a vehicle in order to take him from his barbershop to the victim's apartment building, which was where the victim was killed. Surveillance video, pod cameras, and license plate trackers, captured defendant wearing a black outfit leaving his barbershop and traveling to the victim's residence. Defendant contacted both the victim and his former girlfriend by phone and asked them both to come outside. The victim agreed to meet defendant outside his residence, but his girlfriend

refused. Surveillance footage captured defendant standing across the street from the victim's building. A neighbor heard the victim and another man having an argument about a woman and the victim was attempting to "deescalate the situation." Defendant's former girlfriend observed the situation from a window in the victim's apartment, until defendant noticed her and told her to "come downstairs" at which point she backed away from the window so as not to be visible.

¶ 8        The victim then walked away from defendant to return to the residence, and defendant followed him, shooting and killing the victim near the front door to his residence. The victim's neighbor observed the victim and defendant walking toward the building and lost sight of them, but could hear a continued argument, wherein the victim asked defendant "if he was going to kill [him] over this." The neighbor and defendant's former girlfriend then heard gunshots. Defendant's former girlfriend exited the building and saw the victim bleeding on the stairs to the apartment building. He told her that defendant shot him. Defendant was arrested on September 12, 2023, as he was returning from O'Hare International Airport after an out-of-town trip.

¶ 9        The State noted records from Lyft and T-Mobile, documenting respectively his travel to and from the victim's residence and his 48 phone calls to his former girlfriend and 21 phone calls to the victim on the night of the murder. It also described defendant's criminal history, which was comprised of three prior felony convictions for aggravated battery to a police officer, possession of a controlled substance, and aggravated unlawful use of a weapon.

¶ 10       Defense counsel read a letter from defendant in which he described his youth, current ownership of two barbershops, and strong community involvement. Defendant further wrote that he lived with his mother and his son and helped care for them. Defense counsel also presented multiple letters from defendant's friends and family addressing his good character.

¶ 11       The State argued that the proof was evident and the presumption was great that defendant committed first degree murder, and that he posed a real and present threat to the community based upon the specific facts of the case and because the situation regarded his former girlfriend, whom he would still be able to threaten. The State also argued that there was no condition or conditions that could mitigate the risk the defendant posed to the community, because "[i]t would be incredibly easy for [defendant] to get another Lyft and go wherever he wanted."

¶ 12       The trial court granted the State's petition for pretrial detention, finding that the State proved each prong by clear and convincing evidence. The court reviewed the State's proffer, including the witness observations of the incident, and the physical evidence which showed that defendant was at the location of the shooting and that he had called his former girlfriend 48 times and the victim 21 times earlier that day. The court also described the letters written on defendant's behalf but determined that defendant was a threat to the safety of the community, specifically his former girlfriend.

¶ 13       Defendant subsequently appealed the denial of his motion, and we dismissed his appeal because he did not present a verified motion containing his prior criminal record or his prior addresses, as required by Rule 604(c). *People v. Brown*, No. 1-24-0891B (July 30, 2024) (unpublished summary order under Supreme Court Rule 23(c)).[1]

¶ 14                      A. Motion for Relief Under the Pretrial Fairness Act

¶ 15       On March 18, 2025, defense counsel filed a motion for relief under the Pretrial Fairness Act, requesting the court to review its April 3, 2024, decision and grant him pretrial release. He argued that the State failed to prove all three elements by clear and convincing evidence. In

---

[1] This appeal only concerned defendant's March 19, 2024, motion to vacate the no bail order, and was not directed at the order granting the State's petition for pretrial detention.

addressing that the State failed to prove that the proof was evident or the presumption great that defendant committed first degree murder, defense counsel argued that no physical or forensic evidence connected defendant to the murder and defendant's former girlfriend was biased. Defense counsel also contended that the neighbor described the alleged shooter as a heavy set or muscularly built man who was bald or had short hair, when defendant had a "normal build" with long dreadlocks. Defendant also contended that the State did not establish that he posed a real and present threat to the safety of any person or the community, described defendant's involvement in the community, and commented that the State primarily relied upon the nature of the offense with which defendant was charged. Defense counsel contended that defendant had no history of non-compliance with electronic monitoring or other home monitoring. On March 19, 2025, the court held a hearing on the motion.

¶ 16        During the hearing, defense counsel argued that the State did not establish by clear and convincing evidence that the proof was evident or the presumption great that defendant committed the alleged murder. In particular, defense counsel noted that defendant's former girlfriend did not witness the shooting and was biased against defendant, and the neighbor described the offender inconsistently to his build and hairstyle. Further, defense counsel contended that the link between defendant and the weapon was "limited," no DNA evidence was recovered, and defendant made no inculpatory statement. Defense counsel further contended that the State did not establish by clear and convincing evidence that defendant was a real and present threat to the safety of the community, and presented the court with character letters describing his support of the community. Additionally, defense counsel argued that the State did not establish by clear and convincing evidence that conditions did not exist that could mitigate the risk.

¶ 17       The State recited substantially the same proffer as it did during the April 3, 2024, pretrial detention hearing. The State also proffered that defendant's former girlfriend called her sister and told her that defendant was at the victim's home, and the sister heard gunshots before the phone call ended. The State argued that it met all three prongs of the analysis, and noted that defendant had "jealousy and rage issues" and if he were released would be "a real and present threat" to his former girlfriend. It also commented that the electronic monitoring program is "reactionary" and defendant would easily be able to use his resources to obtain a firearm and seek out his former girlfriend.

¶ 18       The trial court denied defendant's motion for relief, finding that the State established all three prongs by clear and convincing evidence, and noting that the proffer was consistent in establishing defendant at the scene where the victim was shot nine times. The court reviewed the State and defense proffers, including the facts defendant's friends and family asserted in the character letters. It found that "at no point [was] there an end to the argument" between defendant and the victim, and nothing establishing that another person was present when the victim was shot. The court further commented that the manner in which defendant killed the victim established that he was a threat to the safety of persons in the community, and no condition or conditions could mitigate that risk.

¶ 19                                      II. ANALYSIS

¶ 20        Defendant appealed the denial of his pretrial release, and in lieu of filing a memorandum, instead relied upon the arguments in his motion for relief.[2] The State filed a response, arguing that the trial court did not err in denying defendant pretrial release.

¶ 21                              A. The Pretrial Fairness Act

¶ 22        Pretrial release is governed by article 110 of the Code of Criminal Procedure, as recently amended by Public Act 101-652 (eff. Jan. 1, 2023), sometimes referred to as the "Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act" or the "Pretrial Fairness Act."[3] Under article 110 of the Code, a defendant's pretrial release may only be denied in certain limited situations. See 725 ILCS 5/110-2(a), 110-6.1 (West 2024).

¶ 23        If the State files a petition requesting denial of pretrial release, it must prove by clear and convincing evidence that (1) "the proof is evident or the presumption great that the defendant has committed" a qualifying offense, (2) the defendant poses "a real and present threat to the safety" of persons in the community based upon the specific and articulable facts of the case, and (3) no condition or combination of conditions can mitigate such threat. 725 ILCS 5/110-6.1(e) (West 2024). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74; see also *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12 ("Clear and

___

[2] Defendant's notice of appeal lists the relevant dates regarding pretrial release as September 15, 2023, April 3, 2024, and March 19, 2025. However, defendant did not raise any issue related to the September 15, 2023, hearing in his motion for relief nor file a memorandum addressing the March 19, 2025, hearing. Thus, the correctness of the trial court's denial of his motion for relief depends on whether the State's proffer at the April 3, 2024 hearing satisfied the three statutory requirements by clear and convincing evidence. See Ill. S. Ct. R. 604(h)(2), (7) (eff. Apr. 15, 2024).

[3] Our supreme court has recognized that "[n]either name is official, as neither appears in the Illinois Compiled Statutes or public acts." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1.

convincing evidence is that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." (Internal quotation marks omitted.))

¶ 24        The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense and the court concludes the defendant "poses a real and present threat to the safety of any person" or the community. 725 ILCS 5/110-6.1(a)(1) (West 2024). The statute provides a non exclusive list of "[f]actors to be considered in making a determination of dangerousness" that the trial court may consider in assessing whether the defendant poses such a threat. 725 ILCS 5/110 6.1(g) (West 2024). These include the nature and circumstances of any offense charged, the defendant's history and characteristics, the identity of any person whose safety the defendant is believed to threaten, and "[a]ny other factors *** deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." 725 ILCS 5/110-6.1(g) (West 2024).

¶ 25        If the trial court finds the State proved a threat to the safety of any person or the community, the court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2024). In making this determination, the court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the real and present threat to the safety of any person or the community, based on the specific articulable facts of the case, that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id*.

¶ 26          We review *de novo* the trial court's denial of a defendant's pretrial release when the parties proceed by proffer. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 27                                        B. First Degree Murder

¶ 28          Defendant first argued in his motion for relief that the State failed to prove by clear and convincing evidence that the proof was evident or the presumption great that he committed the offense of first degree murder. He contended that the State relied upon circumstantial evidence and the witnesses to the incident were either biased or otherwise unreliable.

¶ 29          First degree murder is a felony offense which qualifies for pretrial detention. 725 ILCS 5/110-6.1(a)(1.5), (e) (West 2024). A person commits first degree murder if, in causing a death, they intend to kill or cause great bodily harm to the victim or another, know that their conduct will result in death, or know that their conduct creates a strong probability of death or great bodily harm. 720 ILCS 5/9-1(a)(1)-(2) (West 2022). The testimony of a single witness is sufficient to convict if the testimony is positive and credible. *People v. Gray*, 2017 IL 120958, ¶ 36. Additionally, "[c]ircumstantial evidence alone can support a criminal conviction." *People v. Zaibak*, 2014 IL App (1st) 123332, ¶ 64.

¶ 30          Here, the State proffered that defendant knew the victim, who was in a romantic relationship with defendant's former girlfriend, and he called his former girlfriend 48 times and the victim 21 times on the day of the incident. The proffer established that defendant ordered a Lyft rideshare vehicle to the victim's residence, where he and the victim argued. This argument was witnessed and overheard by defendant's former girlfriend and a neighbor. The victim was then shot nine times, and nine casings were recovered from the scene. Before he died, the victim told his girlfriend that defendant shot him. Defendant was captured by surveillance footage traveling to the scene, and Lyft records corroborated his travel to and from the victim's residence.

¶ 31    Even considering defendant's contention that the two witnesses' identification of him as the shooter were biased or unreliable, the circumstantial evidence placed him at the scene of the shooting, after having called the victim and his former girlfriend a substantial number of times. See *Zaibak*, 2014 IL App (1st) 123332, ¶ 64. The video footage and Lyft records corroborated his being at the victim's residence near the time that the victim was shot. Thus, the State's proffer established by clear and convincing evidence that the proof was evident or the presumption great that defendant committed the offense of first degree murder.

¶ 32                          C. Threat and Mitigation

¶ 33    Defendant next contends that the trial court erred when it determined that the State met its burden of proving by clear and convincing evidence that he posed a real and present threat to the safety of a person or the community which could not be mitigated upon release. He specifically argues that the State primarily relied upon the nature of the charge and did not allege specific facts to establish that he was a threat to the community. See *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18 (The State must present more than "bare allegations that [the] defendant has committed a violent offense").

¶ 34    Here, the State's proffer established by clear and convincing evidence that defendant was a threat to the community, and specifically to his former girlfriend. In determining whether defendant poses a real and present threat to the safety of persons or the community, the trial court may consider such matters as the nature and circumstances of the offense, defendant's criminal history, the identity of the person threatened, and whether the defendant is known to possess or have access to weapons. See 725 ILCS 5/110-6.1(g) (West 2024). The victim in this case was the new boyfriend of defendant's former girlfriend. The State's proffer stated that defendant argued with the victim regarding "a woman," and that he asked his former girlfriend to come downstairs

when he saw her watching the incident from the building. Before the murder, defendant called his former girlfriend 48 times, and left the scene after the shooting. Further, defendant had a history of violent crimes and had access to a firearm, even though he was prohibited from possessing one as a felon. See *People v. Davis*, 2023 IL App (1st) 231856, ¶ 28 (considering, *inter alia*, the defendant's possession of a firearm as a felon in determining that he was a threat to the community).

¶ 35 Further, the record supports the trial court's finding that no condition or combination of conditions could mitigate the threat posed by defendant's release, as the court noted that "[i]t would be incredibly easy for [defendant] to get another Lyft and go wherever he wanted." Further, defendant fled the scene, and was arrested when he was returning from O'Hare International Airport after having been on an out-of-state trip. Additionally, as noted, defendant was able to obtain a firearm despite being prohibited from possessing one. Thus, the trial court did not err in determining that no conditions of release could mitigate the real and present threat defendant posed to the safety of the community.

¶ 36                                                    III. CONCLUSION

¶ 37 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 38 Affirmed.